# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | : | |
| **MANUEL MEDINA, AGUSTIN** | : | **NO. 4:15-CV-1320** |
| **MARTINEZ, individually and on behalf of** | : | |
| **all similarly situated persons,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **COLLECTIVE ACTION** |
| | : | |
| **PRO OILFIELD SERVICES, LLC f/k/a** | : | |
| **MAXX OILFIELD SERVICES, LLC,** | : | |
| | | |
| **Defendant.** | | |

## PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(b)

Shanon J. Carson
Fed. ID No. 2330781
Sarah R. Schalman-Bergen
Fed. ID No. 2330780
Alexandra K. Piazza
Fed. ID No. 2330782
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
apiazza@bm.net

Jeremi K. Young
State Bar No. 24013793
Rachael Rustmann
State Bar No. 24073653
**THE YOUNG LAW FIRM, P.C.**
1001 S. Harrison, Suite 200
Amarillo, Texas 79101
Telephone: (806) 331-1800
Facsimile: (806) 398-9095
jyoung@youngfirm.com

Josef F. Buenker
State Bar No. 03316860
2030 North Loop West, Suite 120
Houston, Texas 77018
Telephone: 713-868-3388
Facsimile: 713-683-9940

*Attorneys-In-Charge For Plaintiffs*

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   PROCEDURAL HISTORY .......................................................................................... 3

III.  FACTUAL BACKGROUND ......................................................................................... 5

      A.    Collective Members All Work Within The Same Division At Pro Oilfield........... 5

      B.    Collective Members Are Paid Pursuant To The Same Policy And Perform
            Substantially Similar Work ..................................................................................... 5

IV.   ISSUE PRESENTED ...................................................................................................... 6

V.    ARGUMENT ................................................................................................................... 7

      A.    Legal Standard: The District Court Is Authorized To Issue Notice To The
            Proposed Class And Should Do So Immediately ..................................................... 7

      B.    The Court Should Use The Two-Stage Lusardi Approach for Issuing Notice To
            Potential Collective Members ................................................................................. 8

            1.    Notice Is Appropriate On The Facts Presented Because Collective
                  Members are Similarly Situated ................................................................... 9

            2.    Misclassification Cases Like This One Are Appropriate And Well-Suited
                  For Conditional Certification ..................................................................... 11

            3.    The Statute of Limitations Is Running On The Collective Members'
                  Valuable And Viable Claims ...................................................................... 12

VI.   RELIEF SOUGHT ........................................................................................................ 13

      A.    Courts Routinely Require The Production Of Names, Addresses, E-mail
            Addresses, Phone Numbers, Dates of Employment, and Partial Social Security
            Numbers For The Notice Process ........................................................................... 14

      B.    Plaintiffs' Proposed Notice Is Accurate And Informative, And The Notice Plan
            Should Be Approved ............................................................................................... 14

      C.    Pro Oilfield Is Prohibited From Discouraging Collective Members From Joining
            This Action .............................................................................................................. 16

VII.  CONCLUSION ............................................................................................................. 17

CASES

*Aguirre v. SBC Commc'ns, Inc.*,
No. H-05-3198, 2007 WL 772756 (S.D. Tex. Mar. 12, 2007) ...............................................11

*Aragon v. Pro Oilfield Services, LLC*,
4:15-cv-2734 (S.D. Tex.) ...................................................................................................3, 4

*Atkins v. Gen. Motors. Corp.*,
701 F.2d 1124 (5th Cir. 1983) .........................................................................................2, 12

*Falcon v. Starbucks Corp.*,
580 F. Supp. 2d 528 (S.D. Tex. 2008) (Ellison, J.)...............................................................2

*Garrie, et al. v. BC Technical, Inc.*,
No. 4:10-cv-03377 (S.D. Tex. Feb. 16, 2011) .............................................................12, 14

*Guillory v. PF & B Mgmt., LP*,
No. CIV.A. H-11-4377, 2012 WL 5207590 (S.D. Tex. Sept. 14, 2012).................................7

*Hoffman-La Roche, Inc. v. Sperling*,
493 U.S. 165 (1989).........................................................................................................7, 14

*Jones v. Cretic Energy Servs., LLC*,
No. 4:15-cv-00051, -- F. Supp. 3d --, 2015 WL 8489978 (S.D. Tex. Dec. 9, 2015) (Lake, J.) .............................................................................................. *passim*

*Kesley v. Entm't U.S.A. Inc.*,
67 F. Supp. 3d 1061 (D. Ariz. 2014) ..................................................................................16

*Martinez v. Refinery Terminal Fire Co.*,
No. 2:11-cv-295 (S.D. Tex. Jan. 25, 2012) (Ramos, J.) ..................................................14, 16

*McDonald v. Pro Oilfield Services, LLC*,
No. 7:15-cv-00140-HLH (W.D. Tex.) ...............................................................................3, 4

*Morisky v. Public Service Electric & Gas Co.*,
111 F. Supp. 2d 493 (D.N.J. 2000) .....................................................................................11

*Page v. Nova Healthcare Mgmt., L.L.P.*,
No. CIV.A. H-12-2093, 2013 WL 4782749 (S.D. Tex. Sept. 6, 2013) (Lake, J.)............................................................................................................... *passim*

*Prejean v. O'Brien's Response Mgmt., Inc.*,
No. 12-cv-1045, 2013 WL 5960674 (E.D. La. Nov. 6, 2013)..............................................16

*Quintanilla v. A & R Demolition, Inc.*,
No. CIV.A H-04-1965, 2005 WL 2095104 (S.D. Tex. Aug. 30, 2005)
(Rosenthal, J.) ....................................................................................................2

*Riojas v. Seal Produce, Inc.*,
82 F.R.D. 613 (S.D. Tex. 1979)...........................................................................9

*Sandoz v. Cingular Wireless, LLC*,
553 F.3d 913 (5th Cir. 2008) ...........................................................................2, 8

*Shaffner v. Cash Register Sales & Serv. of Houston, Inc.*,
No. H-05-2064, 2006 WL 1007542 (S.D. Tex. Apr. 17, 2006) (Ellison, J.) ...........9

*Sperling v. Hoffmann–La Roche, Inc.*,
118 F.R.D. 392 (D.N.J. 1988).............................................................................8

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
767 F. Supp. 2d 445 (S.D.N.Y. 2011)................................................................16

*Woods v. Vector Mktg. Corp.*,
No. 14-cv-0264 EMC, 2015 WL 1198593 (N.D. Cal. Mar. 16, 2015)..................16

*Yoakum v. PBK Architects, Inc.*,
No. H-10-00278, 2011 WL 4688714 (S.D. Tex. Oct. 4, 2011) (Miller, J.)............12

## STATUTES AND OTHER AUTHORITIES

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ............................................ *passim*

FED. R. CIV. P. 16...............................................................................................3

FED. R. CIV. P. 23.............................................................................................12

# I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Manuel Medina ("Medina") and Agustin Martinez ("Martinez") (together, "Plaintiffs") filed this collective action lawsuit to recover unlawfully withheld overtime wages and liquidated damages from their former employer, Defendant Pro Oilfield Services, LLC f/k/a Maxx Oilfield Services, LLC ("Defendant" or "Pro Oilfield"), based on its violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") for paying its employees on a salary plus day rate basis without paying overtime compensation. Plaintiffs now move to facilitate notice of this lawsuit to the following group of similarly situated employees pursuant to 29 § U.S.C. 216(b):

> All current or former employees of Pro Oilfield Services, LLC f/k/a Maxx Oilfield Services, LLC's ("Pro Oilfield") who performed work for Pro Oilfield in the field in its Torque and Test Division in the United States from [date three years prior to Court's order granting conditional certification] to the present, and who were paid a salary plus one or more day rate payments ("Collective Members").

To date, 3 Collective Members, including Plaintiffs Medina and Martinez have already joined this case and support that Plaintiffs are challenging a common policy that is applicable to all Collective Members. As demonstrated below, conditional certification is more than appropriate because the Collective Members are "similarly situated" in terms of their job duties and compensation. All of the Collective Members have been denied overtime pay as a result of a single and widespread corporate policy that uniformly misclassified them as exempt from the FLSA overtime provisions, regardless of any individualized factor such as experience, age, job duties, or geography.

Further, as shown by the pleadings on file, Plaintiffs' Motion for Certification, and the

affidavits attached herein,[1] Pro Oilfield paid all Collective Members a salary for all hours worked and a day rate for each day worked in the field. Because of this illegal compensation scheme, Pro Oilfield owes Plaintiffs and all of the Collective Members overtime pay for all hours worked in excess of forty (40) hours in a single work week at no less than one and a half times their regular rate of pay.

Plaintiffs file this Motion for Conditional Certification and to Facilitate Notice Pursuant to 29 U.S.C. § 216(b) because, in an FLSA collective action, the statute of limitations "for an opt-in plaintiff runs from the opt-in date." *Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 916-17 (5th Cir. 2008) (citing *Atkins v. Gen. Motors. Corp.*, 701 F.2d 1124, 1130 n. 5 (5th Cir. 1983)). That is, the "limitations period is not tolled with respect to other potential plaintiffs unless and until they opt-in to the case." *Quintanilla v. A & R Demolition, Inc.,* No. CIV.A H-04-1965, 2005 WL 2095104, at *16 (S.D. Tex. Aug. 30, 2005) (Rosenthal, J.) (attached hereto as Ex. 8).

As demonstrated in more detail below, Plaintiffs have more than met the pre-discovery, lenient standard for conditional certification, and notice should be issued to the Collective Members immediately in order to promote the broad remedial purposes of the FLSA and to prevent the wasting of viable and valuable claims for unpaid wages. *See Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 541 (S.D. Tex. 2008) (Ellison, J.) ("[T]he FLSA is a remedial statute, […] and the Supreme Court has acknowledged that Congress intended to give plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.") (internal citations and quotations omitted).

---

[1] Plaintiffs' Motion is supported by the Declarations of Manuel Medina ("M. Medina Decl.") (Ex. 3); Agustin Martinez ("Martinez Decl.") (Ex. 4, English and Spanish versions attached); and Hector Medina ("H. Medina Decl.") (Ex. 5).

Accordingly, Plaintiffs respectfully request that the Court grant this Motion and: (1) conditionally certify this action for purposes of notice and discovery; (2) order that judicially-approved notice be sent to all Collective Members; (3) approve the form and content of Plaintiffs' proposed judicial notice and reminder notice (attached hereto as Exhibits 1 and 2); (4) order Pro Oilfield to produce to Plaintiffs' Counsel the contact information (including the name, address, email address, telephone number, dates of employment, and last four digits of the social security number) for each Collective Member in a usable electronic format; (5) authorize notice to be sent via First Class Mail and e-mail to the Collective Members pursuant to Plaintiffs' proposed notice plan; (6) require that Pro Oilfield post a copy of the notice in appropriate, conspicuous, visible and accessible places at each of its offices, shops, trailers, or other locations in which Collective Members currently work during the 90 day opt-in period; and (7) restrict Pro Oilfield from discouraging Collective Members from joining this action.

## II.   PROCEDURAL HISTORY

Plaintiffs filed their Complaint on May 15, 2015, alleging that Pro Oilfield violated the FLSA by paying them and other employees on an unlawful salary plus day rate compensation plan without paying overtime when they worked over forty hours per week. (*See* ECF No. 1, Compl. ¶¶ 9-13.) Pro Oilfield filed its Answer on August 3, 2015. (ECF No. 7.)  The Court held a Rule 16 conference this action on October 16, 2015, and set the deadline for January 15, 2016 for Plaintiffs to file their notice motion. (ECF No. 12.)

There were previously two additional related actions pending against Defendant: *Aragon v. Pro Oilfield Services, LLC*, 4:15-cv-2734 (S.D. Tex.) and *McDonald v. Pro Oilfield Services, LLC*, No. 7:15-cv-00140-HLH (W.D. Tex.).  Plaintiff's counsel in *Aragon*, *Medina*, and *McDonald* met and conferred and have agreed to jointly prosecute the actions against Defendant in this Court. Accordingly, on November 16, 2015, the parties in *McDonald* filed a notice

voluntarily dismissing that action without prejudice and without costs. Plaintiff *McDonald* and all of the former *McDonald* Opt-In Plaintiffs joined the *Aragon* action. (*Aragon* Stipulation, ECF No. 14.)

On December 4, 2015, Plaintiff Aragon filed a Notice Motion seeking to send notice to the following group of potential opt-in plaintiffs: "[a]ll current or former employees of Pro Oilfield Services, LLC ('Pro Oilfield') who worked for Pro Oilfield as wireline crew members in the United States within the past three years and who were paid a salary plus one or more revenue bonuses ('Crew Members'). Crew Members do not include management employees or Engineers above the Junior Engineer level." (*Aragon* Notice Motion, ECF No. 21 at 1.) As of January 14, 2016, thirteen (13) Plaintiffs and Opt-In Plaintiffs have joined the *Aragon* action. Three of the 13 *Aragon* Opt-In Plaintiffs had previously filed Consents to Join in the *Medina* action, but were moved to *Aragon* with the consent of Defendant, because all three worked in Defendant's Wireline Division. (*See Medina* Notice of Transfer, ECF No. 20; *Aragon* Notice of Filing Consent to Join, ECF No. 26.)

Plaintiffs' original collective was defined in the Complaint as "[a]ll persons employed by the Defendant Pro Oilfield Services, LLC f/k/a Maxx Oilfield Services, LLC, who were paid on an salary plus day-rate basis during the three-year period preceding the filing of this Complaint." (Compl. ¶ 16.) Plaintiffs now move to conditionally certify a collective action under the FLSA for the purpose of sending notice to Collective Members, as defined above. This collective is more narrowly tailored than as defined in the original Complaint. If conditionally certified, the *Aragon* action will cover field employees who worked in the Wireline Division, and this case will cover field employees who worked in the Torque and Test Division. To date, 3 Collective Members, including Plaintiffs Medina and Martinez, have filed Opt-In Consent Forms on the

docket to join this action.

### III. FACTUAL BACKGROUND

#### A. Collective Members All Work Within The Same Division At Pro Oilfield

Pro Oilfield is a full service provider of drilling and completion services. *See* Ex. 6, Pro Oilfield Services, LLC, *available at* http://proosllc.com (last visited January 3, 2016). Pro Oilfield is an employer under the FLSA. (Answer ¶ 2 (admitting that Pro Oilfield is an employer under the FLSA)). Plaintiffs and the Collective Members are employees within Pro Oilfield's Torque and Test Services business unit, which provides various services to Pro Oilfield's customers in the oil and gas industry, including but not limited to pressure testing applications, which include flowback, frac stacks, BOPs, and holding back side pressure. *See* Ex. 7, Pro Oilfield Services, LLC (Torque & Test Services), *available at* http://proosllc.com/torque-test-services (last visited January 3, 2016); Compl. ¶¶ 1-2, 4-5; Answer ¶¶ 1, 4 ("Defendant admits that Medina worked for Defendant as a Torque and Test Operator during the following periods: September 13, 2012 through December 28, 2012 and January 18, 2013 through February 28, 2014.").

#### B. Collective Members Are Paid Pursuant To The Same Policy And Perform Substantially Similar Work

Pro Oilfield pays its Collective Members pursuant to an identical pay policy. Plaintiffs and the Collective Members are paid on a salary plus day rate basis. (Compl. ¶¶ 11, 13; Ex. 3, M. Medina Decl. ¶¶ 4, 7, 9; Ex, 4, Martinez Decl. ¶¶ 4, 7, 9; Ex. 5, H. Medina Decl. ¶¶ 4, 7, 9.) Though the amount received in salary and day rate varied between Collective Members, all Collective Members were paid pursuant to the same salary plus day rate compensation plan. (Compl. ¶ 13; Ex. 3, M. Medina Decl. ¶ 9; Ex, 4, Martinez Decl. ¶ 9; Ex. 5, H. Medina Decl. ¶ 9.)

Regardless of where they work, the primary duty of all Collective Members involves manual, physical, and technical tasks, such as maintaining and servicing oil and gas production facilities, and overseeing the testing and monitoring of wells, pumps, storage facilities, and other pressure control equipment. (Compl. ¶¶ 4-5, 12; Ex. 3, M. Medina Decl. ¶¶ 4-5; Ex, 4, Martinez Decl. ¶¶ 4-5; Ex. 5, H. Medina Decl. ¶¶ 4-5.)  It is indisputable that Plaintiffs and Collective Members performed manual labor for Pro Oilfield. (Answer ¶ 4 (admitting "that Torque and Test Operators are, in part, responsible for 'maintaining and servicing oil and gas production facilities, overseeing and testing and monitoring of wells, pumps, storage facilities and other pressure control equipment.'")).

Moreover, the Collective Members work similar schedules and frequently work a substantial number of overtime hours, often 90 or more hours a week. (Ex. 3, M. Medina Decl. ¶¶ 6, 9; Ex. 4, Martinez Decl. ¶¶ 6, 9; Ex. 5, H. Medina Decl. ¶¶ 6, 9.) Pro Oilfield did not pay Plaintiffs or the Collective Members any overtime premiums for hours worked in excess of 40 in a workweek. (Compl. ¶ 9, 11; Ex. 3, M. Medina Decl. ¶¶ 8-9; Ex, 4, Martinez Decl. ¶¶ 8-9; Ex. 5, H. Medina Decl. ¶¶ 8-9.)

## IV.  ISSUE PRESENTED

The issue herein is whether the Collective Members should be notified about the existence of this action so that they may make an informed decision about whether to join this suit and stop the statute of limitations from running on their claims for unpaid overtime compensation. The merits of Plaintiffs' claims or Pro Oilfield's common defenses are not before the Court, and it is not an appropriate inquiry for purposes of conditional certification.

## V.    ARGUMENT

### A.    Legal Standard: The District Court Is Authorized To Issue Notice To The Proposed Class And Should Do So Immediately

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b). District courts have broad discretion to allow a party asserting FLSA claims on behalf of others to notify potential class members that they may choose to "opt-in" to the suit. *See Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989); *Jones v. Cretic Energy Servs., LLC*, No. 4:15-cv-00051, -- F. Supp. 3d --, 2015 WL 8489978, at *3 (S.D. Tex. Dec. 9, 2015) (Lake, J.) ("When a plaintiff seeks certification to bring a collective action on behalf of others and asks the court to approve a notice to potential plaintiffs, the court has discretion to approve the collective action and facilitate notice to potential plaintiffs.") (attached hereto as Ex. 9); *Guillory v. PF & B Mgmt., LP*, No. CIV.A. H-11-4377, 2012 WL 5207590, at *2 (S.D. Tex. Sept. 14, 2012) *report and recommendation adopted*, No. CIV.A. H-11-4377, 2012 WL 5207637 (S.D. Tex. Oct. 22, 2012) (Lake, J.) ("Courts have the authority to implement the representative action process by facilitating notice to potential plaintiffs, i.e., to persons alleged to be 'similarly situated' to the named plaintiff(s).") (quoting *Hoffman-La Roche, Inc.*) (attached hereto as Ex. 10). Court-authorized notice protects against "misleading communications" by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, assures joinder of additional parties is accomplished properly and efficiently, and expedites resolution of the dispute. *Hoffman-La Roche*, 493 US. at 170-172.

**B.** **The Court Should Use The Two-Stage *Lusardi* Approach for Issuing Notice To Potential Collective Members**

"[M]ost courts in this district follow the [two-step] *Lusardi* approach in suits under Section 216(b)." *Page v. Nova Healthcare Mgmt., L.L.P.*, No. CIV.A. H-12-2093, 2013 WL 4782749, at *3 (S.D. Tex. Sept. 6, 2013) (Lake, J.) (adopting report and recommendation) (attached hereto as Ex. 11); *Jones*, 2015 WL 8489978, at *4. "The *Lusardi* analysis proceeds in two stages: (1) a notice stage, followed by (2) a decertification stage." *Jones*, 2015 WL 8489978, at *4 (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915–16 n. 2 (5th Cir. 2008)). This Court has held that at the notice stage:

> [T]he court makes a decision, usually based solely on the pleadings and any affidavits that have been submitted, whether to certify the class conditionally and give notice to potential class members. *See Mooney*, 54 F.3d at 1213–14. The decision is made using a "fairly lenient standard" because the court often has minimal evidence at this stage of the litigation. *Id.* at 1214. Courts, in fact, "appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id.* & n. 8 (quoting *Sperling v. Hoffmann–La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). Thus, notice stage analysis typically results in conditional certification of a representative class. *Id.*

*Jones*, 2015 WL 8489978, at *3. If the Court conditionally certifies the class, the "putative class members are given notice and the opportunity to 'opt-in,'" and "the action proceeds as a representative action." *Id*. (citing *Sperling*, 118 F.R.D. at 407).

It is not until the second stage, after discovery is largely complete, that Defendant may move to decertify the conditionally certified class. *Id.* This is because, "[a]t this stage, the court has much more *information* on which to base its decision, and makes a factual determination on the similarly situated question." *Id.* If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the class and dismisses the opt-in plaintiffs without prejudice. *Id.* If the class is still similarly situated, the court allows the collective action to proceed. *Id.*

### 1. Notice Is Appropriate On The Facts Presented Because Collective Members are Similarly Situated

At the notice stage, courts determine whether the plaintiff and potential opt-ins are "similarly situated" based upon allegations in a complaint supported by affidavits. *Jones*, 2015 WL 8489978, at *3 (citing *Mooney*, 54 F.3d at 1213-14); *Page*, 2013 WL 4782749, at *6-7. To be similarly situated, each class member's situation need not be identical, but merely similar. *Page*, 2013 WL 4782749, at 6; *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 616 (S.D. Tex. 1979).

In this lawsuit, Plaintiffs have more than met the lenient standard of showing that notice to the Collective Member is appropriate. The evidence attached to this Motion, combined with the other pleadings on file, show Pro Oilfield's policy of improperly misclassifying Plaintiffs and the Collective Members as exempt from the overtime provisions of the FLSA was widespread. The attached evidence and the pleadings filed herein show that the Collective Members were employed within one division, performed substantially similar work, were paid pursuant to the same pay policy, and all worked over 40 hours per week without overtime compensation. (*See generally* Exs. 3-5, Declarations of Plaintiffs and Opt-In Plaintiff.) Moreover, the addition of an Opt-In Plaintiff who has declared that he knows of others who would want to join this action, provides "persuasive evidence that a putative class does exist." *Shaffner v. Cash Register Sales & Serv. of Houston, Inc.*, No. H-05-2064, 2006 WL 1007542 (S.D. Tex. Apr. 17, 2006) (Ellison, J.) (attached hereto as Ex. 12).

Here, the evidence establishes that the job requirements, duties, and pay structures of all Collective Members are sufficiently similar to justify conditional certification. (Compl. ¶¶ 12-16.) In addition to their detailed allegations, Plaintiffs have provided evidence that they and the Collective Members held similar job positions within the Torque and Test Division, and were

charged with the same primary job duties — such as maintaining and servicing oil and gas production facilities, overseeing the testing and monitoring wells, pumps, storage facilities and other pressure equipment. (Ex. 3, Medina Decl. ¶¶ 5, 9; Ex. 4, Martinez Decl. ¶¶ 5, 9; Decls.) Plaintiffs, like the Collective Members, were paid a fixed salary, plus a non-discretionary day rate. (Compl. ¶¶ 11, 13; Ex. 3, Medina Decl. ¶ 9; Ex. 4, Martinez Decl. ¶ 9; Decls.) Although they worked a substantial number of overtime hours, Collective Members, as a group, were uniformly denied payment of any overtime premiums. (Compl. ¶ 11; Ex. 3, Medina Decl. ¶¶ 6-9; Ex. 4, Martinez Decl. ¶¶ 6-9; Decls.) This familiarity with the job requirements, duties, and pay structures of all Collective Members comes from observing and speaking with other Collective Members and reviewing pay documents. (Ex. 3, Medina Decl. ¶ 9; Ex. 4, Martinez Decl. ¶ 9; Decls.)

Consequently, for all of the reasons set forth in this Motion and the attached evidence, this Court should authorize notice to the Collective Members and allow Plaintiffs to serve the Notice and Consent to Join Form attached hereto as Exhibits 1 and 2 on all current and former Collective Members who worked for Pro Oilfield during the relevant statutory time period. Given the weight of the showing made by Plaintiffs, the issuance of Court-approved notice to the Collective Members is appropriate and within this Court's discretion. *See Jones*, 2015 WL 8489978, at *9 (conditionally certifying class where there existed a "reasonable basis for crediting plaintiff's assertion that other aggrieved individuals exist and that the other aggrieved individuals are similarly situated to plaintiff in terms of both job requirements and payment provisions"); *Page*, 2013 WL 4782749, at *3 (holding conditional certification appropriate where plaintiff demonstrates that it is "reasonable to believe that other aggrieved employees, who were subject to the same unlawful policy or plan of Defendant[], exist").

### 2. Misclassification Cases Like This One Are Appropriate And Well-Suited For Conditional Certification

Pro Oilfield's potential affirmative defenses are not a bar to conditional certification and do not create individualized or fact-intensive inquiries. Indeed, Pro Oilfield admits as much: "[t]o the extent this matter is allowed to proceed as a collective action, which Defendant denies is appropriate, ***all defenses asserted for any of the claims of Plaintiffs will apply equally to all plaintiffs who join in the class***." (Answer ¶ 29 (emphasis added.)) Plaintiffs' allegations and the submitted declarations also confirm that they performed substantially similar work and would be subject to common defenses.

Moreover, Courts in this District routinely grant conditional certification in misclassification cases, even where class members hold different job titles, levels, and work in different locations. *See, e.g.*, *Jones*, 2015 WL 8489978, at *8 (conditionally certifying class of coil tubing crew members whose specific job titles and levels differed, and holding "[e]mployees with different job titles are similarly situated for purpose of an opt-in FLSA class when their day-to-day job duties do not vary substantially." *Jones*, No. 4:15-cv-00051, at 19-20 (citing *Aguirre v. SBC Commc'ns, Inc.*, No. H-05-3198, 2007 WL 772756, at *12 (S.D. Tex. Mar. 12, 2007); *Morisky v. Public Service Electric & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (for the purposes of a misclassification claim, "similarly situated" must be "analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt")); *McPherson*, 2015 WL 1470554, at *12-13 (conditionally certifying class of allegedly misclassified drillers and operators who worked in various locations, preformed some differing tasks, and whose job levels ranged from I

to IV) (citing cases holding same) (attached hereto as Ex 13).[2]  While acknowledging that exemption defenses could impact how the class would be defined *after* discovery closes, in *McPherson*, the Court specifically held that "it would be premature for the Court to redefine the class prior to the close of discovery. At that time, Defendants may file a motion to decertify, which should address the possibility that the Court will decertify only part of the putative class…." *Id.* at *15. Where, as here, Pro Oilfield admits that "all defenses asserted … will apply equally to all plaintiffs who join in the class," conditional certification is especially appropriate.

### 3.    The Statute of Limitations Is Running On The Collective Members' Valuable And Viable Claims

Unlike Rule 23 class actions in which the statute of limitations is tolled for all potential class members with the filing of the complaint, the statute of limitations under the FLSA is not tolled with the commencement of the action or even with an order granting conditional certification. *See Atkins*, 701 F.2d at 1130 (The FLSA "specifies that limitations runs from the date the complaint is filed. Appellant's argument that this suit is in the nature of a class action provides him no solace since § 256 also requires class plaintiffs to opt in, and limitations runs from the opt-in date. We cannot alter the express terms of the statute.")  Although the notice process does not stop the statute of limitations, it does, at a minimum, notify the putative collective class members of the case, and that the statute of limitations is running on their claims. *See McPherson*, 2015 WL 1470554, at *15 (noting statute of limitations continues running "until conditionally certified class members opt in").

---

[2] *See also Yoakum v. PBK Architects, Inc.*, No. H-10-00278, 2011 WL 4688714 (S.D. Tex. Oct. 4, 2011) (Miller, J.) (conditionally certifying class of allegedly misclassified construction services representatives who worked at various construction sites) (attached hereto as Ex. 14); *Garrie, et al. v. BC Technical, Inc.*, No. 4:10-cv-03377 (S.D. Tex. Feb. 16, 2011) (ECF No. 29) (Johnson, M.J.) (conditionally certifying class of allegedly misclassified field service engineers) (attached hereto as Ex. 15).

## VI.    RELIEF SOUGHT

Plaintiffs seek the issuance of notice to all current and former Collective Members and the disclosure of the names and contact information (including the addresses, email addresses, telephone numbers, and last four digits of the social security numbers) of all current and former Collective Members employed by Pro Oilfield during the relevant time period. Plaintiffs seek to notify a group of potential collective members described as follows:

> All current or former employees of Pro Oilfield Services, LLC f/k/a Maxx Oilfield Services, LLC's ("Pro Oilfield") who performed work for Pro Oilfield in the field in its Torque and Test Division in the United States from [date three years prior to Court's order granting conditional certification] to the present, and who were paid a salary plus one or more day rate payments ("Collective Members").

Additionally, Plaintiffs seek an Order from this Court adopting the following schedule:

| DEADLINE | SUBJECT |
|---|---|
| **10 Days From Order Approving Notice To Collective Members** | Defendant to disclose the names, last known addresses, e-mail address, telephone numbers, and last four digits of social security numbers of Collective Members in a usable electronic format. |
| **20 Days From Order Approving Notice To Collective Members** | Plaintiffs' Counsel (or Notice Administrator) shall send by mail and email the Court approved Notice and Consent Form to all Collective Members. |
| **45 Days From Date Notice Is Mailed To Collective Members** | Plaintiffs' Counsel or the Notice Administrator is authorized to send by mail and e-mail a second identical copy of the Notice and Consent Form reminding Collective Members of the deadline for submission of the Consent Forms. Plaintiffs' Counsel or the Notice Administrator is authorized to call Collective Members if other methods of contact fail. |
| **90 Days From Date Notice Is Mailed To Collective Members** | Collective Members shall postmark, email, or otherwise submit their Consent Forms to Plaintiffs' Counsel or the Notice Administrator. |

## A. Courts Routinely Require The Production Of Names, Addresses, E-mail Addresses, Phone Numbers, Dates of Employment, and Partial Social Security Numbers For The Notice Process

Plaintiffs request that the Court order Pro Oilfield to provide counsel for Plaintiffs with the names, current or last known addresses, email addresses, phone numbers, dates of employment, and last four digits of the social security numbers of current and former employees fitting the description of the conditionally certified class. Courts routinely require defendants to produce the requested information and allow the issuance of notice through the requested conduits. *See Hoffmann-LaRoche*, 493 U.S. at 170 ("District Court was correct to permit discovery of the names and addresses…"); *Jones*, 2015 WL 8489978, at *10 (holding "defendant shall provide to plaintiff's counsel contact information for potential class members that includes e-mail addresses and telephone numbers"); *McPherson*, 2015 WL 1470554, at *15-16 (ordering defendants to produce names, last known addresses, email addresses (if available), telephone numbers of conditionally certified class); *Martinez v. Refinery Terminal Fire Co.*, No. 2:11-cv-295 (S.D. Tex. Jan. 25, 2012) (ECF No. 54) (Ramos, J.) (ordering the production of names, addresses, email addresses, and telephone numbers) (attached hereto as Ex. 16); *Garrie*, No. 4:10-cv-03377 (S.D. Tex. Feb. 16, 2011) (ECF No. 29) (requiring defendant to produce names, last known addresses, last known residential and cell phone numbers, e-mail addresses, dates of employment, and last four digits of social security numbers for potential class members).

## B. Plaintiffs' Proposed Notice Is Accurate And Informative, And The Notice Plan Should Be Approved

Plaintiffs' proposed Notice and Consent to Join Form (attached as Exhibits 1 and 2) meet the criteria for accurate notice that the Supreme Court envisioned in *Hoffman-LaRoche*, 493 U.S. at 170. As required, the proposed Notice and Consent to Join ("Consent Form") are "timely, accurate, and informative," and should be approved by the Court. *See Hoffman-LaRoche*, 493

U.S. at 172.

Because of the nature of the jobs in which the Collective Members work, which require them to be away from their homes for weeks or months on end, and because many may not receive their mail, or will not receive it on a timely basis, Plaintiffs request that the Court approve a robust notice program that includes a sufficient amount of time for Collective Members to receive notice. To be timely, potential Opt-In Plaintiffs should return their signed Consent Forms to Plaintiffs' counsel or the Notice Administrator postmarked or emailed within ninety (90) days after the date on which the Notice and Consent Forms are initially mailed. Plaintiffs' counsel will file the Consent Forms with the Court on an ongoing weekly basis and no later than two weeks after the end of the 90 day opt-in period. Plaintiffs request that the Court approve the use of a third party "Notice Administrator" in this case, paid for by Plaintiffs, to administer and oversee the mailing of the Notice and Consent Form to the FLSA Class.

In addition, in order to facilitate this Notice and fulfill the broad remedial purposes of the FLSA, Plaintiffs request that the Court order that Notice be provided by both mail and email, and also allow potential collective action members to execute their Consent Forms online through an electronic signature service. Plaintiffs request that a duplicate copy of the Notice be sent as a reminder forty-five (45) days after the initial mailing to those Collective Members who have not yet opted in. Plaintiffs further request that Plaintiffs' Counsel or the Notice Administrator be authorized to call Collective Members if other methods of contact fail. Courts routinely approve similar notice plans to that requested here.[3]

---

[3] *See, e.g.*, *Jones*, 2015 WL 8489978, at *10-11 (approving 60 day notice program that includes mailing of notice via regular mail and email, a follow up reminder notice, and allowing for submission of consent forms to plaintiff's counsel); *McPherson*, 2015 WL 1470554, at *16 (approving notice plan that included a 60 day notice period, mailing of the notice via email and regular mail, sending of a reminder notice, ordering defendants to post a copy of the notice at the

In addition, Plaintiffs request that Pro Oilfield be required to post a copy of the Notice in appropriate, conspicuous, visible and accessible places at each of its offices, shops, trailers, or other locations in which Collective Members currently work during the 90 day notice period. *See Jones*, 2015 WL 8489978, at *10 (requiring defendant to post notice at work sites); *Martinez*, No. 2:11-cv-295 (S.D. Tex. Jan. 25, 2012) (ECF No. 54) (ordering defendant to "post the Notice to Potential Plaintiffs and Notice of Consent on its company bulletin boards and include them with any regular company newsletter transmitted to potential plaintiffs in the 90 days following the date of this Order."); *McPherson*, 2015 WL 1470554, at *16 (ordering defendants to post copy of notice for thirty days following the Court's order); *see also Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail").

Plaintiffs' proposed notice plan is designed to ensure that all Opt-In Plaintiffs are made aware that they have the opportunity to join this lawsuit and toll the statute of limitations on their claims, and should be approved.

### C. Pro Oilfield Is Prohibited From Discouraging Collective Members From Joining This Action

While the FLSA expressly prohibits any type of retaliation or dissuasion by defendant

---

office trailers and job sites for 30 days following the Court's order, and restricting defendants' communications with potential class members); *Woods v. Vector Mktg. Corp.*, No. 14-cv-0264 EMC, 2015 WL 1198593, at *5 (N.D. Cal. Mar. 16, 2015) (authorizing use of an official case website; online opt-in form submission; email notice; publication on Facebook; and an email or postcard reminder notice) (attached hereto as Ex. 17); *Kesley v. Entm't U.S.A. Inc.*, 67 F. Supp. 3d 1061 (D. Ariz. 2014) (authorizing use of an electronic signature service, and reminder notice); *Prejean v. O'Brien's Response Mgmt., Inc.*, No. 12-cv-1045, 2013 WL 5960674, at *10 (E.D. La. Nov. 6, 2013) (holding "notice by both e-mail and first-class mail is both routine and reasonably calculated to accomplish the broad remedial goals of the notice provision of the FLSA.") (attached hereto as Ex. 18); *Page*, 2013 WL 4782749, at *7 (approving 90 day notice period); *Martinez*, 2:11-cv-295 (S.D. Tex. Jan. 25, 2012) (ECF No. 54) (approving mailing and emailing of notices, and allowing counsel to call potential class members if other methods of contact fail).

during a pending case, Plaintiffs request an order to this effect out of an abundance of caution. Plaintiffs specifically request the Court order that "Pro Oilfield is hereby prohibited from communicating, directly or indirectly, with any current or former Collective Members about any matters which touch or concern the settlement of any outstanding wage claims, or other matters related to this suit, during the Opt-In Period. Pro Oilfield shall so instruct all of its managers. This order shall not restrict Pro Oilfield from discussing with any current employee matters that arise in the normal course of business." *See McPherson*, 2015 WL 1470554, at *16 (restricting defendants' communication with current or potential class members).

## VII.    <u>CONCLUSION</u>

Plaintiffs have more than met the minimal burden to show that other similarly situated individuals exist and are interested in asserting their claims. In order to facilitate the purposes of the FLSA's collective action provisions, Plaintiffs respectfully request that the Court grant their Motion and: (1) conditionally certify this action for purposes of notice and discovery; (2) order that judicially-approved notice be sent to all Collective Members; (3) approve the form and content of Plaintiffs' proposed judicial notice and reminder notice; (4) order Pro Oilfield to produce to Plaintiffs' Counsel the contact information (including the name, address, email address, telephone number, dates of employment, and last four digits of the social security number) for each Collective Member in a usable electronic format; (5) authorize notice to be sent via First Class Mail and e-mail to the Collective Members pursuant to Plaintiffs' proposed notice plan; (6) require that Pro Oilfield post a copy of the notice in appropriate, conspicuous, visible and accessible places at each of its offices, shops, trailers, or other locations in which Collective Members currently work during the 90 day opt-in period; and (7) restrict Pro Oilfield from discouraging Collective Members from joining this action.

Dated: January 14, 2016                    Respectfully submitted,

  _/s Shanon J. Carson_____
Shanon J. Carson
Fed. ID No. 2330781
Sarah R. Schalman-Bergen
Fed. ID No. 2330780
Alexandra K. Piazza
Fed. ID No. 2330782
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
apiazza@bm.net

Jeremi K. Young
State Bar No. 24013793
Rachael Rustmann
State Bar No. 24073653
THE YOUNG LAW FIRM, P.C.
1001 S. Harrison, Suite 200
Amarillo, Texas 79101
Telephone: (806) 331-1800
Facsimile: (806) 398-9095
jyoung@youngfirm.com

Josef F. Buenker
State Bar No. 03316860
2030 North Loop West, Suite 120
Houston, Texas 77018
Telephone: 713-868-3388
Facsimile: 713-683-9940

*Attorneys-In-Charge for Plaintiffs and the
Potential Collective Members*

## CERTIFICATE OF CONFERENCE

I certify that on January 4, 2016, counsel for Plaintiffs discussed Plaintiffs' intent to file this Motion with counsel for Defendant.  Defendant indicated that it is opposed.

/s/ *Shanon J. Carson*
Shanon J. Carson

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF on all known parties on this 14th day of January, 2016.

/s/ *Shanon J. Carson*
Shanon J. Carson